IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

STEVEN MALCOLM,

        Plaintiff,

v.

REYNOLDS POLYMER TECHNOLOGY, INC.,
a foreign company,

        Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, Steven Malcolm (hereinafter "Plaintiff"), files his Complaint against Defendant, Reynolds Polymer Technology, Inc. (hereinafter "Reynolds"), and complains and alleges as follows:

**PARTIES**

1. Plaintiff Steven Malcolm is an individual, who at all times relevant, resided in and owned the property at 7 The Queens Crescent, Auchterarder, Perthshire, PH3 1QL in the United Kingdom (hereinafter "Subject Property").

2. Defendant Reynolds Polymer Technology, Inc. (hereinafter "Reynolds") is a corporation organized and existing under the laws of Colorado, having its principal place of business located at 607 Hollingsworth St, Grand Junction, Colorado. Reynolds is in the business

of engineering acrylic and polymer material products, and is engaged in turnkey projects in the Aquarium industries.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy, exclusive of fees and costs, is in excess of seventy-five thousand dollars ($75,000).

4. Venue is proper in the United States District Court District of Colorado pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL ALLEGATIONS

5. This action arises from the failure of Reynolds to properly design, engineer, fabricate, and/or manufacture an approximately 25,000 gallon built-in circular marine Aquarium (hereinafter the "Aquarium") which spanned three floors in the home of Steven Malcolm.

6. On November 30, 2015, the Aquarium suddenly collapsed, causing the heavy polymer shell to shatter, resulting in salt water and live fish to spread across the home, damaging the property and its contents.

7. In 2007, Mr. Malcolm entered into a sales and installation contract with Acrylic Tank Manufacturing, Inc. (hereinafter "ATM") for the design, engineer, fabrication, supply and installation of a custom state-of-the-art architectural marine Aquarium, to be installed at the Subject Property.

8. Upon information and belief, ATM entered into an agreement with Reynolds for the construction, manufacture and fabrication of the Aquarium.

9. At all times relevant, Reynolds was aware this contract was for the benefit of Plaintiff and after completion of manufacture of the Aquarium, Reynolds shipped the Aquarium to Scotland where it was installed in Mr. Malcolm's home.

10. The installation of the Aquarium was completed in or around March 2010 and the substantial completion of construction of the home was completed on or about May 5, 2011.

11. The Aquarium remained in the home, without change in design or construction, until it suddenly collapsed on November 30, 2015.

12. The acrylic polymer shell shattered, allowing thousands of gallons of salt water and the contents of the Aquarium to flow through the property, thereby damaging the home and its contents.

13. Mr. Malcolm had to relocate to a different place of residence while debris removal and repairs to his home commenced.

14. As a direct and proximate result of the November 2015 Aquarium collapse, Mr. Malcolm sustained significant building and business property damage in excess of £ 5,900,000 GBP (in excess of approximately $7,550,000).

## COUNT I

### NEGLIGENCE

15. Plaintiff adopts and incorporates by reference paragraphs 1 through 14 above as if fully set forth herein.

16. At all times relevant to this action, the applicable law of Colorado imposed upon Reynolds a duty to exercise reasonable care, and to comply with the existing standards of care, in their preparation, design, research, manufacture, sale, and/or distribution of the custom made Aquarium, including a duty to ensure that their product would not cause damage to Plaintiff.

17. At all times relevant to this action, Reynolds knew or reasonably should have known that the Aquarium was improperly designed, of poor quality, and lacking sufficient support at the Aquarium tank base.

18. Based on what they knew or reasonably should have known as described above, Reynolds deviated from principles of due care, deviated from the standard of care, and were otherwise negligent in one or more of the following particulars:

   a. Reynolds improperly designed, manufactured, and/or fabricated the custom Aquarium such that the Aquarium failed during normal use during its normal useful life; and

   b. Reynolds failed to implement appropriate and sufficient quality control measures including inspection and/or testing to ensure that it properly designed, fabricated, and assembled the custom Aquarium; and

   c. Reynolds otherwise acted negligently with respect to the design, manufacture, fabrication, assembly, inspection and/or testing of the custom Aquarium.

19. The negligence and product defect alleged above were a substantial contributing cause of the injuries and damages suffered by Plaintiff.

20. The injuries and damages suffered by Plaintiff were the reasonably foreseeable results of Reynolds' negligence.

21. As a direct and proximate cause of Reynolds' negligence, the custom Aquarium designed, manufactured, and/or distributed by Reynolds suddenly shattered, causing damages to Plaintiff in excess of £ 5,900,000 GBP (in excess of approximately $7,550,000).

## COUNT II

### STRICT LIABILITY

22. Plaintiff adopts and incorporates by reference paragraphs 1 through 21 above as if fully set forth herein.

23. Reynolds is engaged in the business of designing, fabricating, assembling, selling and distributing Aquariums such as the Aquarium sold to Plaintiff.

24. The Aquarium designed, manufactured, and fabricated by Reynolds was expected to reach Plaintiff and did reach Plaintiff without a substantial change from the condition in which Reynolds designed and/or manufactured it.

25. Defendant Reynolds manufactured, sold, and/or distributed the Aquarium containing the following manufacturing defects which rendered the Aquarium in a defective condition unreasonably dangerous at the time of sale and distribution:

    a. The quality of materials was poor such that small bubbles were observed through the materials which should not have existed; and

    b. The Aquarium was improperly designed such that the Aquarium walls were too thin. Because the Aquarium was constructed by way of four wall segments, the Aquarium walls should have been thicker than the 80mm thickness it was designed with; and

    c. The Aquarium bonding of the wall segments was improper in that the surfaces had not been polymerized; and

    d. Appropriate quality control measures, including appropriate and sufficient inspection and/or testing, were not implemented to ensure that Aquarium was properly manufactured; and

    e. The Aquarium was otherwise in a defective condition and unreasonably dangerous.

26. The Aquarium the aforesaid defects failed under normal use within its useful life expectancy due to those defects.

27. The Aquarium was in a defective condition and unreasonably dangerous for the use which Reynolds, as the manufacturer, seller, and/or distributor, intended it to be used and/or lacked features and designs which would have rendered it safe for the intended use.

28. As a direct and proximate result of the aforesaid defects in the Aquarium, the Aquarium suddenly collapsed, thereby causing extensive damage to Plaintiff's property in excess of £ 5,900,000 GBP (in excess of approximately $7,550,000).

## COUNT III

## BREACH OF CONTRACT – Third Party Beneficiary

29. Plaintiff adopts and incorporates by reference paragraphs 1 through 28 above as if fully set forth herein.

30. Prior to shipping the Aquarium to Scotland, Reynolds entered into a contract with ATM wherein Reynolds agreed to plan, design, engineer, fabricate, inspect, and/or manufacture an Aquarium to be shipped to Scotland where it would be installed in Plaintiff's home.

31. Plaintiff is informed and believes, and thereon alleges, that said subcontract was made for the benefit of Plaintiff and therefore Plaintiff is a member of a class of persons intended to be benefitted by said contract and therefore was intended third party beneficiary of said subcontract.

32. Plaintiff believes and based thereon alleges that Reynolds breached the subcontract by failing to properly fabricate the Aquarium in a good and workmanlike manner consistent with industry standards by: (a) fabricating an Aquarium of poor quality; (b) fabricating an Aquarium with poor materials such that small bubbles were observed through the materials which should not have existed; (c) fabricating an Aquarium of poor design in that the Aquarium walls were too thin and the design of the Aquarium base was improperly constructed and lacking support; and (d) fabricating an Aquarium with poor bonding such that the bonds were improperly made and polymerization did not occur across the full thickness of the faces of the joint as it should have.

33. As a direct and proximate result of one or more of the foregoing breaches of contract, the Aquarium suddenly collapsed, resulting in damages to Plaintiff in excess of £5,900,000 GBP (in excess of approximately $7,550,000).

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY– Third Party Beneficiary

34. Plaintiff adopts and incorporates by reference paragraphs 1 through 33 above as if fully set forth herein.

35. Reynolds designed, engineered, fabricated and manufactured a custom state-of-the-art architectural marine Aquarium, to be installed in Plaintiff's home.

36. Reynolds knew that the Aquarium it was designing, planning, building, fabricating, and/or manufacturing was for Plaintiff who would use the Aquarium in his home and be affected by the Aquarium should it fail.

37. Reynolds knew or should have known that the Aquarium was not generally fit for the ordinary purposes for which they were intended to be used, as they were designed and manufactured with substandard and defective materials.

38. Reynolds knew or should have known that the Aquarium it designed, fabricated, manufactured and distributed would be used by Plaintiff without substantial change and would be in the same condition when installed in the subject property as the condition in which they were manufactured.

39. The Aquarium failed on November 30, 2015.

40. But for Reynolds' breach of warranty, Plaintiff would not have sustained injury or damages.

41. As a direct and proximate result of Reynolds' breach of the implied warranty of merchantability, the Aquarium suddenly collapsed, resulting in damages to Plaintiff in excess of £ 5,900,000 GBP (in excess of approximately $7,550,000).

## COUNT V

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE–

### Third Party Beneficiary

42. Plaintiff adopts and incorporates by reference paragraphs 1 through 41 above as if fully set forth herein.

43. At the time of contracting for the sale of the custom made Aquarium, Reynolds had reason to know that the Aquarium was being designed, manufactured, and fabricated to be used in Plaintiff's home to serve as an architectural Aquarium, spanning three stories of the Subject Property and that Plaintiff would be affected by the Aquarium should it fail.

44. Reynolds knew or had reason to know that Plaintiff, as the end-user of the Aquarium, justifiably relied on Reynolds' skill and judgment to provide an Aquarium for the Plaintiff's particular purpose.

45. However, Reynolds breached the warranty implied at the time of sale in that Reynolds fabricated, designed, manufactured, distributed, sold, and/or shipped an Aquarium that was not fit for the particular purpose for which it was required, in that the Aquarium was of poor quality and improper design.

46. From the time Reynolds shipped the Aquarium to the Subject Property, it remained there without substantial change in its condition, and as a result thereof, had one or more substantial defects upon construction and installation in the Subject Property.

47. The Aquarium failed on November 30, 2015.

48. But for Reynolds' breach of warranty, Plaintiff would not have sustained injury or damages.

49. As a direct and proximate result of Reynolds' breach of the implied warranty of fitness, the Aquarium suddenly collapsed, resulting in damages to Plaintiff in excess of £ 5,900,000 GBP (in excess of approximately $7,550,000).

**THE PLAINTIFF DEMANDS A TRIAL BY JURY.**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For compensatory damages in an amount to be proven at trial;

2. For pre-judgment interest;

3. For post-judgment interest;

4. For attorneys' fees and costs incurred herein; and

5. For such other and further relief as the court may deem just and fair.

Dated this 27th day of November, 2017.

        Respectfully submitted,

        FORAN GLENNON PALANDECH PONZI
        & RUDLOFF PC

        By: *s/ Jeri J. Wettestad*
            Jeri J. Wettestad, # 33719
            1600 Broadway, Suite 2425
            Denver, Colorado 80202
            (720) 336-2244
        *Attorneys for Plaintiff*