IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-2835-WJM-KLM

STEVEN MALCOLM,

    Plaintiff,

v.

REYNOLDS POLYMER TECHNOLOGY, INC., a foreign company,

    Defendant.

---

**ORDER GRANTING PROPOSED INTERVENOR'S MOTION TO INTERVENE**

---

In this action, Plaintiff Steven Malcolm ("Plaintiff") brings negligence and strict liability claims against Defendant Reynolds Polymer Technology, Inc. ("Defendant"). (ECF No. 29 at 3–5.) Before the Court is Acrylic Tank Manufacturing, Inc.'s ("ATM") Motion to Intervene ("Motion" or "Motion to Intervene"; ECF No. 33) and Unopposed Request for Oral Argument in regard to the Motion ("Motion for Oral Argument"; ECF No. 48). For the reasons set forth below, the Motion to Intervene is granted and the Motion for Oral Argument is denied as moot.

## I. BACKGROUND

On September 6, 2007, Plaintiff hired ATM to design, build, and install a 25,000 gallon custom, state-of-the-art marine aquarium (the "Aquarium") for his home in Scotland. (ECF Nos. 29 at 2 & 33-2 at 3.) ATM subsequently retained Defendant to manufacture the Aquarium according to ATM's specifications. (ECF No. 29 at 2.) Defendant manufactured the Aquarium and shipped it from its factory in Colorado

directly to Scotland, where it was installed by ATM in 2010.  (*Id.*)

ATM alleges that after it had installed the Aquarium, Plaintiff, without ATM's knowledge or approval, substantially modified the tank by connecting it to the roof of the house.  (ECF No. 33 at 4.)[1]  In addition, ATM claims that representatives from Defendant inspected the Aquarium in 2013 and observed the roofing modification but did not notify ATM of the alterations.  (*Id.* at 5.)  On November 30, 2015, the Aquarium suddenly collapsed, allegedly causing significant damage to Plaintiff's home.  (ECF No. 29 at 3.)

On April 21, 2017, Plaintiff filed suit against ATM and Defendant in the United States District Court for the District of Nevada ("Nevada lawsuit" or "Nevada action"), seeking damages relating to the collapse of the Aquarium.  (ECF No. 33 at 5.)  Defendant subsequently filed a motion to dismiss Plaintiff's claims against it for lack of personal jurisdiction.  (*Id.*)  The motion was granted on July 6, 2017, and Defendant was dismissed from the Nevada lawsuit.  (*Id.*)  On November 14, 2017, ATM filed a third party complaint against Defendant in the Nevada action, seeking contribution and indemnification for the damages sought by Plaintiff in regard to the collapse of the Aquarium.  (*Id*. at 5–6.)

After Defendant was dismissed from the Nevada lawsuit, Plaintiff filed the instant action against Defendant on November 27, 2017.  (ECF No. 1.)  Plaintiff amended his

---

[1] This allegation appears to be denied by Plaintiff, who claims that the "Aquarium remained in the home, without change in design or construction, until it suddenly collapsed." (ECF No. 29 at 3.)  Defendant, however, alleges that Plaintiff and his architects "may have improperly planned the [A]quarium . . . to be a structural element to support the roof of the house and/or a skylight, causing or contributing to the [A]quarium's collapse."  (ECF No. 32 at 3.)

complaint on March 1, 2018, but neither the original complaint nor the amended complaint included ATM as a defendant. (*See* ECF Nos. 1 & 29.) On February 7, 2018, Defendant filed a motion in the Nevada action to dismiss ATM's third party complaint against it for lack of personal jurisdiction over Defendant. (ECF No. 38-4 at 6.)

While Defendant's motion to dismiss was still pending before the Nevada court, ATM filed the instant Motion to Intervene on June 13, 2018. (ECF No. 33.) ATM states its reason for wanting to intervene as follows:

> Until recently, the parties believed that the jurisdictional issues in Nevada would be resolved by now, eliminating the need to litigate this case in Colorado. When it became clear that the Nevada court might not resolve the jurisdictional issues before this case became active, however, ATM promptly filed its motion to intervene.

(ECF No. 39 at 3.) On August 21, 2018, the Nevada court granted Defendant's motion to dismiss ATM's third party complaint against it for lack of personal jurisdiction. (ECF No. 41.) Thus, Defendant is no longer a party in the Nevada lawsuit. On November 14, 2018, ATM filed an Unopposed Request for Oral Argument in regard to its Motion to Intervene. (ECF No. 48.)

## II. LEGAL STANDARD

### A. Intervention by Right

Federal Rule of Civil Procedure 24(a)(2) provides that, on timely motion, the court must permit intervention as of right to anyone who:

> [C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Under Tenth Circuit law interpreting this rule, "an applicant may intervene as a matter of

3

right if (1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not adequately represented by existing parties." *Elliott Indus. P'ship v. B.P. Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005). "The Tenth Circuit generally follows a liberal view in allowing intervention under Rule 24(a)." *Id.*

**B.    Permissive Intervention**

Federal Rule of Civil Procedure 24(b)(1)(B) provides that, on timely motion, the court may permit intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." The decision whether or not to grant a motion for permissive intervention under Rule 24(b) is within the district court's sound discretion. *See, e.g.*, *City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996). In exercising this discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### III.  ANALYSIS

ATM seeks to intervene both as a matter of right under Rule 24(a) and permissively under Rule 24(b). (ECF No. 33 at 2–3.) In its response to ATM's Motion to Intervene, Defendant states the following:

> [Defendant] does not oppose ATM's request to intervene in this Colorado case as it will promote judicial economy to have all parties in a single forum without jurisdictional issues and challenges, as is currently occurring in the parallel case in the . . . District of Nevada, in addition to the reasons set forth in ATM's Motion.

4

(ECF No. 37 at 1.)  Plaintiff, however, opposes intervention in any form.  (ECF No. 38.)

Because the Court will exercise its discretion and allow ATM to intervene under Rule 24(b), it need not address whether ATM is entitled to intervene as a matter of right.  *See Lower Ark. Valley Water Conservancy Dist. v. United States*, 252 F.R.D. 687, 690 (D. Colo. 2008).  The Tenth Circuit has held that Rule 24 is to be construed liberally in favor of intervention.  *Utahns for Better Transp. v. United States Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002).  Ultimately, the Court has significant discretion with respect to whether to permit a party to permissibly intervene under Rule 24(b).  *Kane Cnty., Utah v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010).

Rule 24(b) allows permissive intervention under the following conditions: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.  *See* Fed. R. Civ. P. 24(b).

**A.    Timeliness**

The "timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."  *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (internal quotation marks omitted).  "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner.  Federal courts should allow intervention where no one would be hurt and greater justice could be

5

attained." *Id.* (internal quotation marks omitted).

ATM argues that its Motion "is timely because in light of all the circumstances, ATM's need for intervention became apparent only recently, there is no prejudice to the existing parties, and ATM would be significantly prejudiced without intervention to this action." (ECF No. 33 at 7.) In support of the assertion that the need for intervention became apparent only recently, ATM points out that Plaintiff originally sued both Defendant and ATM in Nevada, but Defendant was able to obtain dismissal for lack of personal jurisdiction. (*Id.*) In addition, ATM explains that it "attempted to bring [Defendant] back in the Nevada action through a third-party complaint," but the parties are still disputing whether the Nevada court had personal jurisdiction over Defendant. (*Id.*) ATM asserts that "[w]hen it became clear that the Nevada court might not resolve the jurisdictional issues before this case became active, [] ATM promptly filed its motion to intervene." (ECF No. 39 at 3.)

In addition, ATM argues that its June 13, 2018 Motion to Intervene is timely and that Plaintiff and Defendant "would not be prejudiced by ATM's intervention" because the action is still in its "initial stages ([Plaintiff] just on March 1, 2018 filed his first Amended Complaint, and only on March 15, 2018 [Defendant] filed its Answer)." (ECF No. 33 at 7–8; *see* ECF Nos. 29 & 30.) Moreover, ATM argues that its Motion is timely and that the existing parties will not be prejudiced since discovery had not yet begun and because the parties are already aware of all the facts relating to ATM's involvement in the underlying transaction. (ECF No. 39 at 2.)

Finally, ATM alleges that it would suffer a great deal of prejudice if it is not allowed to intervene in the instant action:

> ATM would have to defend its position in the Nevada action
> with the risk that another finder of fact could reach a contrary
> conclusion in Colorado. Also . . . ATM would have to file a
> whole separate Colorado action to recover against [Defendant],
> and this would entail a significant increase in expenditure not
> only for all parties, but also for the judicial system as a whole.

(ECF No. 33 at 8.)

In its response, Plaintiff argues that ATM's Motion is untimely because "ATM waited nearly seven months after [Plaintiff] filed suit against [Defendant] before filing the subject Motion to Intervene." (ECF No. 38 at 5.) In addition, Plaintiff alleges that "ATM's attempt to force itself into this litigation as a party Defendant thwarts [Plaintiff's] choice of forum and is contrary to law which gives preference to the forum where an action is first brought." (*Id.*)

In determining whether the Motion was timely, the Court finds the short length of time that ATM knew of its interest in the case to be particularly persuasive. Before Plaintiff brought this action, Plaintiff, Defendant, and ATM were all parties to the Nevada lawsuit. Although Defendant was able to obtain a dismissal of Plaintiff's claims against it, ATM brought Defendant back into the Nevada action by filing a third party complaint. Thus, ATM reasonably believed that it did not need to join this action. Defendant, however, moved to dismiss the third party complaint. Concerned that the Nevada court would not rule on Defendant's motion before this lawsuit became active, ATM filed its Motion to Intervene.

A key argument in Plaintiff's response to ATM's Motion, is that ATM "brought a third-party action against Defendant" in Nevada, "thereby joining the same three parties that ATM seeks to join in this action through its intervention." (ECF No. 38 at 1.) In

7

other words, Plaintiff is arguing that ATM should not be allowed to intervene in this case since all three parties are already joined in the Nevada lawsuit. In addition, Defendant notes:

> Although [Defendant] filed a motion to dismiss ATM's third party claim for lack of personal jurisdiction, ATM responded to [Defendant's] motion by identifying additional evidence supporting various contacts [Defendant] had within the State of Nevada that are pertinent to [Defendant's] motion to dismiss and *will subject [Defendant] to the jurisdiction of the Nevada court*.

(*Id.* at 2–3 (emphasis added).) The Nevada court, however, granted Defendant's motion to dismiss ATM's third party complaint. (*See* ECF No. 41 at 1.) Thus, Defendant is no longer a party in the Nevada action. This dismissal did not occur until August 21, 2018, therefore, ATM's interest in this case has only recently become ripe.

In addition, this Court finds that allowing intervention would not prejudice the existing parties because the action is still in its initial stages. At the time the Motion was filed on June 13, 2018, discovery had not yet begun and was subsequently stayed until August 30, 2018. (ECF No. 43.) In addition, the existing parties have just now filed a motion to extend discovery deadlines and are already apprised to the relevant facts relating to ATM's involvement in the underlying transaction. (ECF Nos. 51 & 53.) Moreover, ATM has shown that it would suffer a considerable amount of prejudice if its Motion is denied as ATM would have to file a separate action in Colorado to attempt to recover from Defendant.

In sum, the Court concludes that greater justice could be attained in this case by allowing ATM to intervene. Accordingly, the Court finds that, in light of all the circumstances, ATM's Motion was timely.

**B.      Common Questions of Law and Fact**

In addition, permissive intervention requires that the intervenor have a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). ATM asserts that it "unambiguously has claims . . . against [Defendant] and defenses towards [Plaintiff] that share with this action common questions of law and common questions of fact." (ECF No. 33 at 11.) Plaintiff, on the other hand, "disputes that ATM's claims and defenses share common questions of law and fact with this action [since] ATM is not a party to this action and no claims or cross-claims are being asserted against it in this action since the subject action is based in tort, whereas the claims against ATM in Nevada are based in contract." (ECF No. 38 at 9.)

The Court finds Plaintiff's argument to be wholly unconvincing. A review of Defendant's answer and ATM's proposed answer clearly shows that ATM's affirmative defenses share common questions of law and fact with the main action. (*See* ECF Nos. 33-1 at 3–8 & 30 at 4–5.) The same can be said about Plaintiff's claims against Defendant and ATM's proposed cross-claims. (*See* ECF Nos. 29 at 3–4 & 33-2 at 9–10.)

Indeed, Plaintiff's own prior conduct contradicts its assertion that ATM's claims and defenses do not share common questions of fact with this action. In filing a "Notice of Related Cases" pursuant to D.C.COLO.LCivR 3.2, Plaintiff noted how this action and its case against ATM in Nevada both "involve the collapse of the Aquarium that caused damage to Plaintiff's home and personal property." (ECF No. 12 at 2.) According to D.C.COLO.LCivR 3.2, "[a] party to a case shall file a notice identifying all cases pending

9

in this or any other federal, state, or foreign jurisdiction that are related to the case. . . . Related cases are cases that have common facts and claims and [ ] have at least one party in common." Since ATM's claims and defenses would likewise revolve around the collapse of the Aquarium, ATM's claims and defenses share, at the very least, common questions of fact with this action.

Therefore, this Court finds that ATM has claims against Defendant and defenses towards Plaintiff that share with this action common questions of law and common questions of fact.

**C.      Undue Delay or Prejudice to the Existing Parties**

According to Federal Rule of Civil Procedure 24(b)(3), "the court must consider whether the intervention will unduly delay or prejudice adjudication of the original parties' rights." Expounding upon this rule, the Tenth Circuit has explained that if an applicant's intervention "clutter[s] the action" without aiding the current parties or issues, the applicant's motion to intervene may be denied. *Arney v. Finney*, 967 F.2d 418, 421–22 (10th Cir. 1992).

This Court has already concluded that ATM's intervention will not prejudice the existing parties and Plaintiff has not provided this Court with any further arguments to support a contrary finding. (*See* ECF No. 38 at 9.) Therefore, this Court will only address whether ATM's intervention will unduly delay adjudication of the original action. In its response, Plaintiff's only argument is that ATM's intervention "will undoubtedly delay the proceedings." (*Id.*) The Court finds this argument also to be unavailing.

Several weeks after ATM filed its June 13, 2018 Motion to Intervene, Plaintiff and Defendant filed a joint motion to stay discovery. (ECF No. 35.) This motion was

10

subsequently granted (ECF No. 40) and discovery was stayed until August 30, 2018 (ECF No. 43). In addition, Plaintiff and Defendant filed a joint motion to extend discovery deadlines on December 11, 2018 (ECF No. 51), which was subsequently granted (ECF No. 53). Moreover, Plaintiff and Defendant are already apprised to the facts relating to ATM's involvement in the underlying transaction. Thus, this Court finds that allowing ATM to intervene would not cause undue delay to the existing parties. In addition, this Court finds that ATM's input will not prejudice adjudication of the original parties' rights, but instead is likely to make a significant and useful contribution to the development of the underlying factual and legal issues. *See Lower Ark. Valley Water Conservancy Dist.*, 252 F.R.D. at 691.

In conclusion, the Court finds that ATM's request to intervene is timely, that ATM has a claim and defenses with facts and questions of law common to the existing parties, and that allowing intervention will not unduly delay these proceedings or cause undue prejudice to the existing parties. Accordingly, the Motion to Intervene (ECF No. 33) is granted. Because the Motion is granted, the Court need not hear oral argument pertaining to the Motion. Therefore, ATM's Motion for Oral Argument (ECF No. 48) is denied as moot.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. ATM's Motion to Intervene (ECF No. 33) is GRANTED;
2. ATM's Motion for Oral Argument (ECF No. 48) is DENIED AS MOOT;
3. ATM's proposed Answer (ECF No. 33-1) is ACCEPTED AS FILED. The Clerk shall docket the proposed Answer as a separate filing on CM/ECF; and

4. The Clerk and parties shall amend the caption of this case to reflect that Acrylic Tank Manufacturing, Inc., is an Intervenor-Defendant in this action.

Dated this 20th day of December, 2018.

BY THE COURT:

William J. Martínez
United States District Judge